Sidney A. Fine, J.
This is an application to stay arbitration. Petitioner Grumman Aerospace Corporation (Grumman) secured contracts from the Bureau of Naval Weapons for research and development and manufacture of certain aircraft and components. In each of said aircraft, petitioner was to supply a * ‘ height fin ding radar system ’ ’. The contracts contained authorization and consent clauses under the Armed Services Procurement Regulations. Pursuant thereto, the Government waives its sovereign immunity and consents to the eminent domain taking of any patent property rights.
*681 Subdivision (a) of section 1498 of title 28 of the United States Code provides in part:
“ (a) "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
“ For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.”
Thus, in the circumstances outlined in the statute, there is privy only between the owner of the patent and the United States.
The original research and development contract was entered into in 1957. Thereafter, in about 1960, Grumman was awarded contracts to manufacture planes and components. A number of planes have been produced and are in use by the Government; others will continue to be provided.
As early as 1963, Lockheed Aircraft Corporation (Lockheed) notified Grumman that it was entitled to royalties pursuant to the provisions of Manufacturers Aircraft Association Inc. (MAA) cross-license agreement. Parenthetically, MAA. is a trade organization of aircraft manufacturers; both Grumman and Lockheed are members of same. Various aircraft manufacturers have submitted patents to a pool which the others may use. Disputes among them with respect to royalties are arbitrated.
In May of 1964, Grumman notified Lockheed that it did not manufacture the height finding radar but procured it from the General Electric Company. It further suggested that Lockheed pursue the matter with the Bureau of Naval "Weapons. On May 26, 1964, Lockheed filed a claim with the Department of the Navy which was denied on December 29,1967. Thereafter Lockheed, on November 4, 1970, sued the Government in the United States Court of Claims for the alleged infringement of its patent pursuant to section 1498 of title 28 of the United States Code. This suit is still pending; at the conclusion of discovery proceedings a trial date will be set.
In September of 1971, the Mi A at Lockheed’s request issued a notification of arbitration concerning the height finding radar which had been procured by Grumman for the Navy. It is the *682 contention of Lockheed that it was misled by Grumman when it informed them that it did not manufacture the height finding radar but procured it from the General Electric Company. It alleges that Grumman purchased the components for the radar system in at least four separate parts and installed them in the aircraft.
Under the usual law, participation in an arbitration precludes a person from having it stayed. Here, Grumman entered into a stipulation narrowing the issues, appointed an arbitrator, requested and consented to an adjournment and permitted its employee and arbitrator to join in the appointment of an arbitrator. Grumman argues that these were merely preliminary activities made in good faith to attempt to resolve the dispute, but that it reserved its rights to object to arbitration pending the determination of the Government with respect to the claim. The Government has now notified them that it refuses to waive the exclusive jurisdiction of the Court of Claims, that there are certain supervening issues between it and Lockheed which can only be resolved in the Court of Claims and will not reimburse Grumman for any adverse arbitration award ias an allowable cost. It is also readily apparent that the supervening issues, such as the claim that the Lockheed patent was conceived or first actually reduced to practice pursuant to Government research and development contracts and therefore it has a royalty-free license and the defense of the Government to patent misuses pursuant to an antitrust action presently pending in the Federal Court for the Southern District of New York against MAA, could not be raised by Grumman in the arbitration.
The law is also clear that a party waives :amy right to arbitrate by inconsistent conduct evincing am intention to forego such right. Here, Lockheed sought to collect its claim from the Government and when such was denied instituted the lawsuit. Lockheed argues that the suit against the Government is not inconsistent with its request to arbitrate — the former being a tort claim against a defendant not bound by the arbitration contract, and the latter a proceeding under the contract. In any event, it never commenced a suit against Grumman.
If this were the usual contract action, the usual law as enunciated would be applied; however, this matter is concerned with the procurement of military equipment for national purpose and safety. As such, there is an overriding issue of public policy which must be considered and which is controlling in this case.
The Government has the right to the eminent domain taking of any patent property rights to ensure the continuing supply *683 of military equipment for national purposes. To protect the owner of such, subdivision (d) of section 1498 of title 28 provides the sole remedy. In addition, the Government by its authorization and consent has waived its sovereign immunity. Lockheed is well aware of its rights under the law and is familiar with Government procurement contracts.
In Western Elec. Co. v. Hammond (135 F. 2d 283, 285), the court stated: “In order that the United States may not be delayed in obtaining needed materials and equipment through the reluctance of manufacturers to take government contracts which might involve them in expensive litigation with patentees, the Act, in such cases, confers immunity upon the manufacturer and gives the patentee an exclusive remedy in the Court of Claims against the United States, whereby the patentee may recover full compensation for any proven patent infringement.”
It appears that the above case was concerned with the interpretation of a contract contradicting the position of Lockheed that section 1498 of title 28 of the United States Code applies to infringement suits (torts) and not to suits against the Government suppliers on licensing agreement contracts. Also, if Lockheed is successful in the arbitration and an unreimbursable award is given it, Grumman will have to discontinue the unprofitable contract, which will thwart the policy behind section 1498 of title 28 of the United States Code.
Furthermore, it is noted that Lockheed has assumed inconsistent positions. In its Court of Claims action, it denies the existence of a license between it and Grumman, while in the arbitration it asserts that such does exist between them.
Basing this decision on the public policy considerations involved, the application to stay arbitration is granted. The Court of Claims has exclusive jurisdiction of the claim sought to be arbitrated. However, in order to finally dispose of all of the issues raised, petitioner must intervene in or consent to be bound by the Court of Claims action.